## LEACOX v. GRIFFITH.

**Minors:** RIGHT TO DISAFFIRM CONTRACTS : APPLICATION OF RULE : JURISDICTION. Plaintiff, while a minor, bought a threshing-machine, giving his notes for the purchase price, and defendant signed the notes as surety, taking a mortgage on the machine for his security ; but plaintiff afterwards sold the machine without defendant's consent, and appropriated the proceeds to his own use. Afterwards, and while plaintiff was still a minor, defendant was compelled to pay the notes, in amount about seven hundred dollars. Defendant as administrator of plaintiff's father, held five hundred dollars which belonged to plaintiff as his distributive share of the estate. While plaintiff was yet a minor, and while he yet had some of the proceeds of the machine in his hands, he and the defendant had a settlement, in which it was agreed that defendant should keep the five hundred dollars in full satisfaction of his claim against plaintiff for paying the machine notes; and plaintiff then receipted in full to defendant for his share of his father's estate. Thirty-two days after plaintiff came of age he notified defendant of that fact, and that he elected to disaffirm all contracts made by him with defendant during his minority ; also that he had none of the property or money obtained by him by virtue of such contracts, so that he was unable to make restitution thereof. Afterwards he brought this action to recover his share of his father's estate. *Held*—

(1) That he had a right to disaffirm the contracts, under section 2238 of the Code. (See cases cited in opinion.)

(2) That the disaffirmance was made in a reasonable time after obtaining his majority.

(3) That the objection that the district court as a court of probate had no right to hear and determine the matter was not sound, since that court has general original as well as probate jurisdiction, and had jurisdiction of the subject-matter.

(4) That a judgment was properly rendered in plaintiff's favor for his share of his father's estate.

*Appeal from Fremont District Court.*—HON. GEORGE
CARSON, Judge.

FILED, OCTOBER 29, 1888.

THIS is a controversy growing out of the settlement of the estate of Thomas Leacox. The plaintiff is a son and heir of the deceased, and the defendant is the administrator of the estate. The administrator filed his report, and the plaintiff filed exceptions thereto. An issue was made up between the parties, and the cause was referred to a referee, who found the facts and conclusions of law, and reported in favor of the plaintiff. Exceptions were taken to the report by the defendant. The exceptions were overruled, and judgment was rendered for the plaintiff in conformity with the report of the referee. Defendant appeals.

*James McCabe*, for appellant.

*C. S. Keenan*, for appellee.

ROTHROCK, J.—I. No exception was taken to the facts found by the referee. His report is set out at length in the abstract. It is not necessary to set it out in detail here. The material facts are in substance, as follows: In September, 1881, Thomas Leacox, the father of the plaintiff, was killed in a railroad accident, through the negligence of the railroad company operating the road upon which he was traveling as a passenger. The defendant was appointed administrator of his estate, and in that capacity he collected three thousand dollars damages from the railroad company. The deceased left no will, and no other property, and the plaintiff was entitled to a distributive share of the money collected by the defendant. The plaintiff was born on the sixteenth day of December, 1864, and became of age on the sixteenth day of December, 1885. In June, 1881, the plaintiff purchased a threshing-machine, and gave his promissory notes therefor. The defendant signed said notes as surety for the plaintiff, and, to indemnify the defendant for becoming surety on the notes, the plaintiff executed to defendant a chattel mortgage upon the machine and other property, in the usual and proper form. In the fall of 1882, without the knowledge or consent of the defendant, the plaintiff sold the machine,

the mortgage being wholly unsatisfied, and the machine at that time being worth about five hundred dollars. The defendant learned of the sale of the machine about a month afterwards, but at no time gave his consent to the sale nor ratified the same. When the notes given for the machine became due, the defendant was compelled to pay the same in full, the amount paid by him being more than seven hundred dollars. About a year after the defendant paid the machine notes, as administrator, and as an individual, he had a settlement with the plaintiff. At that time defendant had five hundred dollars in his hands as the distributive share of the plaintiff in the estate. It was then agreed between the parties "fairly, honestly, and free from fraud, and with full knowledge and understanding of all the parties, that the plaintiff should receipt to the defendant for said five hundred dollars without receiving any money, and that the defendant should release all claims he held against the plaintiff by reason of having paid the machine notes;" and in pursuance of said agreement the plaintiff gave to the defendant a written receipt in which he acknowledged the receipt of five hundred dollars as his share in his father's estate; and the plaintiff then and there gave his distributive share in the estate to the defendant, and the same was accepted by defendant in settlement and satisfaction of said suretyship obligation so far as plaintiff could act as a minor. At the time of the settlement the plaintiff had part of the proceeds of the sale of the machine in his possession. This settlement was made, and the receipt executed, July 27, 1883. Thirty-two days after the plaintiff became twenty-one years of age he served a written notice on the defendant, of which the following is a copy: " *To John X. Griffith*: You are hereby notified that on the sixteenth day of December, 1885, the undersigned attained his majority, and that he now disaffirms a contract made and entered into with you during the year 1881, consisting of a note for $665, with a chattel mortgage to secure the same, on a threshing-machine, having been executed by him while he was a minor. He further states that

he is unable to make any restitution of any money or property acquired by him under or by virtue of said contract, for the reason that he has not owned or held possession of the same or any part thereof since attaining his majority aforesaid. He also disaffirms any and all other contracts, of every nature and kind, made and entered into with you prior to said December 16, 1885, on the ground of his minorship aforesaid. Witness my hand at Shenandoah, Iowa, this eighteenth day of January, 1886. MERTON S. LEACOX." At the time of the settlement between the parties there had been no tender of said machine, or of the proceeds of the sale of said machine, nor of the part of the proceeds of said machine, to the defendant nor to the machine company; and at the time of serving the above notice, and at all times thereafter, the plaintiff had no part of the proceeds received by him for said machine. . The defendant at all times knew the age of the plaintiff. Upon these facts the referee and the court held that the settlement and release of the defendant were invalid, and of no force, and that the defendant must pay the five hundred dollars to the plaintiff. The correctness of this holding is the question presented for determination by this appeal.

It is provided by section 2238 of the Code that "a minor is bound, not only by contracts for necessaries, but also by his other contracts, unless he disaffirms them within a reasonable time after he attains his majority, and restores to the other party all money or property received by him by virtue of the contract, and remaining within his control at any time after attaining his majority." This statute was doubtless enacted for the purpose of more clearly defining the rights and obligations of infants, growing out of their contracts other than for necessaries. By the terms of the statute the infant is bound by his contract unless he disaffirms it within a reasonable time after attaining his majority. At common law it was sometimes held that an infant was not bound by his contract unless he ratified it after becoming of full age. In other cases it was held that

in order to avoid the contract there must be a disaffirmance after majority; and in some cases it was held that the disaffirmance must be made within a reasonable time after attaining full age. And again it was held that a disaffirmance at any time within the statute of limitations would be sufficient; and in some cases of executed contracts it was held that there could be no disaffirmance without a return of the property or money received by the infant pursuant to the contract; and other cases held to the contrary. We need not cite nor further refer to adjudged cases upon this question. For a full discussion of the subject, see 2 Kent, Comm. 245 *et seq.* See, also, 2 Greenl. Ev. secs. 362–368, and *Tucker v. Moreland*, 10 Pet. 74. It appears from the facts in this case that the plaintiff disaffirmed the chattel mortgage which he executed to the defendant by selling the mortgaged property before he became of age. This he had the legal right to do. It was not necessary that he should defer a disaffirmance of the contract until he became of age. *Childs v. Dobbins*, 55 Iowa, 205. It is claimed, however, that the sale of the mortgaged property was a crime under the statute of this state, and that the defendant had a right of action against the plaintiff for tortiously and wrongfully selling the mortgaged property, and, having such right of action, it constituted a valid consideration for the settlement and release of the distributive share in the estate. We think it is a sufficient answer to this position to say that the contract by which the plaintiff released his distributive share in his father's estate has no necessary connection with the mortgage. The mortgage was a mere indemnity to the defendant for assuming the obligation of surety for the plaintiff, and the defendant did not follow and assert his right to the mortgaged property. His acts show that he relied upon the plaintiff's obligation to reimburse him for money paid as surety, and it is by no means to be conceded that the plaintiff did not have the right to disaffirm the mortgage. In *Miller v. Smith*, 26 Minn. 248, 2 N. W. Rep. 942, it was held that the mortgage of an infant upon his personal property for

borrowed money, there being no delivery of the mortgaged property, is voidable, at his election, at any time during his infancy; and if the mortgaged property is taken from his possession under the mortgage without his consent, he may reclaim the same upon the disaffirmance of the contract, without returning or offering to return the money borrowed. See, also, *McKanna v. Merry*, 61 Ill. 177; *Merriam v. Cunningham*, 11 Cush. 40; *Stafford v. Roof*, 9 Cow. 626; *Chapin v. Shafer*, 49 N. Y. 412; *Walsh v. Young*, 110 Mass. 399. This rule is modified by our statute, by which upon disaffirmance the infant is required to "return to the other party all money or property received by him by virtue of the contract, and remaining under his control after attaining his majority." In *Jenkins v. Jenkins*, 12 Iowa, 195, it was held that it is only such money or property as the infant received by virtue of the contract which he is required to return. If he had disposed of the property, and squandered the money received from the other party, he may nevertheless avoid the contract. See, also, *Hawes v. Burlington, C. R. & N. Ry. Co.*, 64 Iowa, 315.

We think that the referee and the court below drew the correct legal conclusions from the facts found in the case. It is wholly immaterial whether the contract of an infant is executed or executory. He has the right to avoid it. If executed by the payment of money or delivery of property to the infant, he is required by our statute to return such of the property or money as remains under his control after he becomes of age. He is not required to return money or property received from other sources. Much is said in the argument of appellant about the hardship of allowing the plaintiff to wrong the defendant out of seven hundred dollars of money, which was in good faith paid for him. And it is asserted that the privileges of infancy ought to be "used as a shield and not as a sword." In answer to this it is to be said that where an infant receives property or money during infancy, and consumes and wastes it, to require him to restore the value

of it upon avoiding the contract would deprive him of the very protection which it is the policy of the law to afford him.    In *Tucker v. Moreland, supra*, it is said : "In many cases the disaffirmance of a deed made during infancy is a fraud upon the other party.    But this has never been held sufficient to avoid the disaffirmance, for it would otherwise take away the very protection which the law intends to throw around him to guard him from the effects of his folly, rashness and misconduct."   The right of an infant to avoid his contract "is absolute and paramount to all equities in favor of third persons, even purchasers without notice."   *Jenkins v. Jenkins, supra.*

II.    It is claimed that the disaffirmance was not made within a reasonable time.    It appears to have been served on the defendant on the thirty-second day after the plaintiff became of age.    No rule on the question can be made applicable to all cases.    Each must be determined on its own facts.    We think that in this case the time must be held to be reasonable.

III.    It is claimed that a probate court has no right nor authority to determine the question in issue between the parties.    The district court is a court of general original jurisdiction, and it also has jurisdiction of all matters in probate.    An issue was made up by these parties.    It was referred to a referee, and tried, and his report was approved and confirmed.    As the court had jurisdiction of the subject-matter, the objection is without merit.

AFFIRMED.